WAL–MART STORES, INC., d/b/a Sam's Wholesale Club and Allen Smith, Appellants,

v.

Carmen DEGGS, Appellee.

No. 09–95–094 CV.

Court of Appeals of Texas,
Beaumont.

Submitted April 25, 1996.

Decided August 29, 1996.

Publication Ordered June 23, 1998.

J. Preston Wrotenbery, Magenheim, Batemen, Robinson, Wrotenbery & Helfand, LLP, Alan Magenheim, Hirsch, Robinson, Sheiness & Glover, Houston, for appellants.

Paul F. Ferguson, Jr., Provost & Umphrey, Beaumont, Otto D. Hewitt, III, Hewitt Law Firm, Alvin, for appellee.

Before WALKER, C.J., and STOVER and HILL,[1] JJ.

## OPINION

JOHN HILL, Justice (Assigned).

Wal–Mart, Inc., and Allen Smith, the manager of its Sam's Wholesale Club store (Sam's) in Beaumont, appeal from a judgment in favor of Carmen Deggs, a judgment she recovered for damages suffered when she tripped and fell on a mat inside the entrance of the store. Appellants contend in nine points of error the trial court erred: (1) in granting a directed verdict against Allen Smith, holding him personally liable for an alleged premises defect at the store; (2) in granting a directed verdict against Wal–Mart and Smith on the issue of liability because admissions deemed admitted facts involved legal conclusions or otherwise the existence of other individuals' subjective mental states; (3) in granting a directed verdict against Wal–Mart on the basis of admissions deemed against Smith; (4) in granting Ms. Deggs' motion for directed verdict on the basis of deemed admissions because her own testimony controverted a deemed admission bearing on her own contributory negligence; (5) in

1. The Honorable John Hill, sitting by assignment pursuant to Tex. Gov't Code Ann. § 74.003(b) (Vernon 1988).

charging the jury to award for lost wages and earning capacity under a multi-element damage charge; (6) in granting a directed verdict finding them liable for 100% of Ms. Deggs' damages because there is evidence she suffered from pre-existing injuries; and (7) in granting compounded prejudgment interest on the judgment. Appellants also urge the damage award is excessive, requiring remittitur, and that the trial court abused its discretion in failing to withdraw the deemed admissions, then compounded the error by granting Deggs a directed verdict.

We reverse and remand the judgment in favor of Ms. Deggs as to Smith because the trial court erred in granting directed verdict as to Smith on the issue of liability. We reform the judgment as to Wal–Mart so that prejudgment interest is simple, not compound, interest. We affirm the judgment as to Wal–Mart, as reformed, for the reasons set forth in this opinion.

Appellants contend in point of error number one the trial court erred by granting a directed verdict against Allen Smith for the alleged premise defect at Sam's because Ms. Deggs failed to show he owed her any duty. At the time Ms. Deggs fell, Smith was the general manager at Sam's.

■ As appellants acknowledge, either an owner or the operator of premises may have liability for a premises defect. *See Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex.1992). A general manager of a corporation has been defined as "[o]ne having general direction and control of corporation's affairs, and who may do everything which corporation could do in transaction of its business." BLACK'S LAW DICTIONARY 685 (6th ed.1990), citing *Continental Supply Co. v. Forrest E. Gilmore Co. of Texas,* 55 S.W.2d 622, 629 (Tex. Civ.App.—Amarillo 1932, writ dism'd). We know of no reason why a store's general manager would not have the same general direction and control of the store's affairs as a corporation's general manager would have with respect to the corporation.

■ As Sam's general manager, we know of no reason why Smith should not be considered as the operator of the premises in question. As such, in accordance with *Keetch,*

Smith, as the operator of the premises in question, had the duty to maintain the premises in a condition that would not pose an unreasonable risk of harm. *Keetch,* 845 S.W.2d at 264; *see also S.H. Kress & Co. v. Selph,* 250 S.W.2d 883, 893 (Tex.Civ.App.— Beaumont 1952, writ ref'd n.r.e.).

In contending that Smith owed Ms. Deggs no duty, appellants rely on the cases of *J. Weingarten, Inc. v. Moore,* 449 S.W.2d 452 (Tex.1970); *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695 (Tex.1994); and *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195 (Tex.1995). We have examined all of these cases and find each is distinguishable.

In *Weingarten,* an injured store employee at Weingarten's grocery store sought recovery from another employee, head of the company's Customer Employee Insurance Service, for failing to give her proper instructions as to the manner of lifting required of her. *Weingarten,* 449 S.W.2d at 453. In that case there was no finding or evidence the insurance service employee assumed the responsibility of instructing the employee as to the manner of lifting required of her or that Weingarten had authorized the employee to give such instructions or relied on the employee to do so. *Id.* In this case Smith, as general manager of the store, had the duty to maintain the store's premises in a reasonably safe condition.

In *Natividad* the Texas Supreme Court held where an insurance company contracted with a corporation to perform its adjusting services, the company did not have a duty of good faith and fair dealing to the insurance company's policyholders because there was no special relationship between the adjusting company and the insured. *Natividad,* 875 S.W.2d at 698. We find this case irrelevant to the question of whether the general manager of a store has a duty to the general public to maintain the store in a reasonably safe condition.

In *Centeq,* the Texas Supreme Court held Centeq's power to elect a majority of the board of a condominium homeowner's association was distinct from the power to control security, so that it owed no duty to condominium owners with respect to the security of the premises. *Centeq Realty, Inc.,* 899

S.W.2d at 198–199. In this case Smith, as general manager of Sam's, did have control with respect to all operations of the store, including those involving the condition of the floors there. We overrule point of error number one.

Appellants urge in points of error numbers two, three, four, and seven that the trial court erred in granting a directed verdict against them on the issue of liability.

At the conclusion of all of the evidence the trial court granted Ms. Deggs a directed verdict holding Smith and Wal–Mart to be 100% responsible for any injuries she suffered resulting from her fall at Sam's.

■ A directed verdict for a plaintiff is proper when reasonable minds can only draw one conclusion from the evidence. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978); *Artripe v. Hughes*, 857 S.W.2d 82, 85 (Tex. App.—Corpus Christi 1993, writ denied).

■ In order to prevail in this cause of action based upon a premises defect, Ms. Deggs was required to plead and prove the following:

(1) Actual or constructive knowledge of some condition on the premises by the owner /operator;

(2) That the condition posed an unreasonable risk of harm;

(3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and

(4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Keetch*, 845 S.W.2d at 264.

We will first examine the evidence to see if reasonable minds can draw only one conclusion as to whether Ms. Deggs has established those elements as to Smith, the general manager.

The evidence shows Ms. Deggs slipped and fell on a "kink" in a non-skid mat placed on the floor due to rain that had fallen earlier in the day. Ms. Deggs submitted several requests for admission to Smith. Because Smith did not answer the admissions timely, they were deemed admitted. These were read as admitted to the jury. They include the following:

(1) On the date of the incident in question Allen Smith was employed by Wal–Mart Stores, Inc., d b a Sam's Wholesale Club;

(2) Allen Smith's employment with Wal–Mart Stores, Inc., d/b/a Sam's Wholesale Club was in a managerial capacity.

(3) the incident made the basis of this lawsuit was proximately caused by the negligence of one or more employees of the defendant Wal–Mart Stores, Inc., d/b/a Sam's Wholesale Club, and, at the time of such negligence that employee or employees were acting in the course and scope of that employment;

(4) the rug or mat that caused Ms. Deggs to trip was in an unreasonably dangerous condition and created an unreasonably dangerous condition and risk of harm for the store customers;

(5) Allen Smith knew, well in advance of Ms. Deggs' fall, that the mat or rug in question was in an unreasonably dangerous condition and created an unreasonably dangerous condition and risk of harm for the store customers;

(6) Other employees of Wal–Mart Stores, Inc. d/b/a Sam's Wholesale Club knew, well in advance of Ms. Deggs' fall, that the mat or rug was in an unreasonably dangerous condition and created an unreasonably dangerous condition and risk of harm for the store customers.

(7) Ms. Deggs was seriously injured as a result of the incident in question.

(8) Ms. Deggs was not negligent in any way nor did she do anything to cause or contribute to the incident in question.

(9) The incident in question was 100% the fault of Wal–Mart Stores, Inc. d/b/a Wal–Mart Stores, Inc. d/b/a Sam's Wholesale Club.

■ With respect to the liability of Smith, we note these admissions do not address the issue as to when, prior to Ms. Deggs' fall, Smith knew of any dangerous condition in the mat or rug in question; whether it was the same condition that caused her fall; whether he did or did not exercise reasonable care to reduce or eliminate the risk, or

whether his failure to use such care proximately caused Ms. Deggs' injury. We therefore hold that as to Smith the evidence was not such that reasonable minds could only draw one conclusion with reference to the issue of his liability. Consequently, the trial court erred by directing a verdict concerning the liability of Smith.

■ While the admissions did show the incident in question was proximately caused by the negligence of Wal–Mart employees, it could have been caused by an employee other than Smith, without there being any negligence on his part. While it is true that Smith, as manager, has a duty to the customers to exercise reasonable care to maintain the premises in a safe condition, he is not vicariously liable for the negligence of other employees. *S.H. Kress & Co.*, 250 S.W.2d at 894.

■ The admissions establish Ms. Deggs' injury was caused by a mat that was in an unreasonably dangerous condition, and that her fall was proximately caused by the negligence of one or more Wal–Mart employees while they were acting in the course and scope of their employment. This could only be true if one of them knew of the unreasonably dangerous condition of the mat, did not exercise reasonable care to reduce or eliminate the risk, and that such failure proximately caused Ms. Deggs' injuries. It is undisputed Wal–Mart would have vicarious liability for the negligence of its employees who are within the course and scope of their employment. Consequently we hold reasonable minds could draw only one conclusion from the evidence as to Wal–Mart's liability.

■ However, Wal–Mart urges that deemed admissions addressed to Smith do not constitute evidence against Wal–Mart. Smith's admissions were not properly admissible as to Wal–Mart because they are hearsay. *USX Corp. v. Salinas*, 818 S.W.2d 473, 479 (Tex.App.—San Antonio 1991, writ denied); *Texas Supply Center, Inc. v. Daon Corp.*, 641 S.W.2d 335, 338 (Tex.App.—Dallas 1982, writ ref'd n.r.e.). Prior to the admissions being read into evidence, counsel for Wal–Mart stated, "I do think I need to object to the admission pleading, per se; but the

content certainly can be read in." Wal–Mart made no objection, at the time the admissions were read to the jury, to the admissions being admitted generally nor did it ask for an instruction limiting the admissions. Inadmissible hearsay admitted without objection is not denied probative value merely because it is hearsay. Tex.R. Civ. Evid. 802. Wal–Mart waived its hearsay objection by not asserting it at trial. *De La Garza v. Salazar*, 851 S.W.2d 380, 383 (Tex.App.—San Antonio 1993, no writ).

In a Motion in Limine, Ms. Deggs requested appellants be prohibited from offering any evidence contrary to the admissions and from explaining to the jury how the admissions came to be admitted. Appellants, in response to that motion, argued the trial court should allow Wal–Mart to present evidence contradicting the admissions. The trial court granted the Motion in Limine. Neither appellant subsequently sought to introduce evidence before the jury contradicting the admissions.

■ The trial court's ruling granting a motion in limine is not a ruling on the admissibility of evidence and does not preserve error. *Waldon v. City of Longview*, 855 S.W.2d 875, 880 (Tex.App.—Tyler 1993, no writ). We conclude Wal–Mart failed to preserve error as to the use of the admissions against it at trial.

■ We note Wal–Mart also failed to preserve error concerning the exclusion of any evidence that it might have desired to present contradicting the admissions by failing to tender evidence developed in a bill of exception, tendering such evidence, and suffering an adverse ruling. *Id.* at 880. Instead, Wal–Mart developed the evidence, which consisted of the entirety of two depositions and all of Ms. Deggs' hospital records, after the jury was deliberating. While it tendered the evidence, it did not suffer any adverse ruling, and, with the evidence already being closed, the tender was not timely.

Appellants also urge the trial court erred by failing to withdraw the deemed admissions. Tex.R. Civ. P. 169(1) provides when there is no timely response to a request for

admissions the matter is admitted without the necessity of a court order. Tex.R. Civ. P. 169(2) states "the court may permit withdrawal or amendment of responses and deemed admissions upon a showing of good cause for such withdrawal or amendment if the court finds that the parties relying upon the responses and deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be subserved thereby."

Appellants had the burden to present evidence to the court to establish good cause for Smith's failure to make timely answers to the requests for admission, that withdrawals of those admissions could be ordered without undue prejudice to Deggs, and that the presentation of the merits would be subserved thereby. *Tinney v. Team Bank,* 819 S.W.2d 560, 562 (Tex.App.—Fort Worth 1991, writ denied). The requirement of good cause in Rule 169 is the same as that in the case of default judgments under Rule 320 and may be established by a showing the failure to file was not intentional or in conscious disregard of the party's obligation to file an answer. *Id.* at 562.

▬ A trial court has broad discretion to permit or deny the withdrawal of deemed admissions. *Stelly v. Papania,* 927 S.W.2d 620, 39 Tex. Sup.Ct. J. 878 (June 28, 1996); *Employers Ins. of Wausau v. Halton,* 792 S.W.2d 462, 464 (Tex.App.—Dallas 1990, writ denied). An appellate court should set aside the trial court's ruling only if, after reviewing the entire record, it is clear that the trial court abused its discretion. *Stelly,* 927 S.W.2d 620, 39 Tex. Sup.Ct. J. at 878. An abuse of discretion occurs when a court acts without reference to guiding rules or principles, or acts arbitrarily or unreasonably. *Id.*

Jury selection was scheduled in this case for October 17, 1994, but the selection was postponed due to adverse weather conditions. Two days later, on October 19, 1994, Smith filed his motion asking he be allowed to withdraw the deemed admissions. The trial court held a hearing on the motion on that date. Smith's evidence on the subject of good cause consisted of the affidavit of Elizabeth Flood, a legal assistant for the firm representing appellants. Ms. Flood indicat-

ed in her affidavit the firm received Plaintiff's Supplemental Interrogatories to Allen Smith and Plaintiff's Second Request for Production to Allen Smith, but did not receive any requests for admissions. She went into detail as to how she would have handled them if they had been received. She further indicated the interrogatories and request for production were responded to in a timely manner.

In her response to Smith's motion, Ms. Deggs presented the affidavit of Cindy Wagner, legal assistant for her attorney. Ms. Wagner indicated in that affidavit that on July 29, 1994, she mailed discovery requests to Smith's counsel and those requests consisted of interrogatories, a request for production, and admissions. She said the three items were mailed separately to Mr. Smith, and she had green cards as to each item. She related she had also mailed the three items to Alan Magenheim, counsel for Wal-Mart. She said in fact there had been no response to the interrogatories nor to the request for production. She indicated she had also sent interrogatories and a request for production on July 7, 1994, and appellants had not responded to that request either.

▬ No witnesses were called at the hearing by any of the parties. Actual jury selection began on October 24, 1994. Considering the whole record, including the lack of testimony presented at the hearing, the conflict of testimony represented by the affidavits, and considering the motion to withdraw admissions was not filed until the case was called for trial, we hold the trial court did not abuse its discretion by denying appellants' motion to withdraw the deemed admissions.

Appellants rely on *Estate of Pollack v. McMurrey,* 858 S.W.2d 388 (Tex.1993), contending the trial court erred in denying their motion without conducting an evidentiary hearing. We find this case distinguishable. In *Pollack,* the estate of Sheldon Pollack, the defendant, filed a motion for new trial, seeking to have a default judgment against it set aside. The trial court considered the motion and denied it without a hearing, finding certain objections to the affidavits of the estate's representatives were meritorious and should

be granted. The Texas Supreme Court held the trial court erred by failing to hold an evidentiary hearing on the fact issues raised. *Id.* at 392. In this case the trial court held a hearing and appellants presented no witnesses. There is no indication in the record the trial court prevented appellants from presenting any witness they might have wished to present in support of their motion.

Appellants point out that certain admissions call for legal conclusions, rather than facts, and some are based upon the mental state of other persons. These defects are all presented for the first time on appeal; therefore, nothing is presented for review. TEX. R.APP. P. 52(a). We note again that appellants presented no objection to the admissions being read as evidence to the jury. We additionally note that, as to appellant Smith, we have already sustained the contention that the evidence, including those admissions, was insufficient to support the granting of a directed verdict against him on the issue of liability.

Appellants also assert the trial court erred by granting Ms. Deggs a directed verdict because her testimony she was getting her Sam's card out of her purse at the time she fell contradicted the admission Wal-Mart was 100% responsible for causing the incident in question.

■ The Texas Supreme Court has held an admission once admitted, deemed or otherwise, is a judicial admission, and a party may not then introduce testimony to controvert it. *Marshall v. Vise,* 767 S.W.2d 699, 700 (Tex.1989). A party may waive the right to rely upon an opponent's deemed admissions unless objection is made to the introduction of evidence contrary to those admissions. *Id.* However, the nature of the testimony must be such that it put the party charged with making such an objection on notice that it controverts the admission. *See Graco Robotics, Inc. v. Oaklawn Bank,* 914 S.W.2d 633, 644 (Tex.App.—Texarkana 1995, writ dism'd). We do not believe testimony that Ms. Deggs was getting her Sam's card out of her purse as she was walking into the store at the time of her fall constituted testimony of such a nature as to put Ms. Deggs on notice that it controverted the admission

Wal–Mart was 100% at fault in her fall. We overrule points of error numbers two, three, four, and seven.

Appellants contend in point of error number five the trial court erred by submitting a broad form charge to the jury including the element of future lost earning capacity because there is no evidence to support this element and because Ms. Deggs failed to answer an interrogatory question involving that subject matter.

The damage issue in this case listed several elements of damage the jury could consider in arriving at its verdict. The question called for a single dollar amount for all of the elements, rather than a separate amount for each element. Among other things, appellants objected to the submission of lost earning capacity in the future because "it's against the great weight and the preponderance of the evidence in this case and that there is no evidence to support loss of earnings in the past or in the future."

■ The standard for review of the charge is abuse of discretion, which occurs when the trial court acts without reference to any guiding principles. *Texas Dept. of Human Serv. v. E.B.,* 802 S.W.2d 647, 649 (Tex. 1990).

■ "Loss of earning capacity that a party will suffer in the future is always uncertain and left largely to the jury's sound judgment and discretion." *Borden, Inc. v. Guerra,* 860 S.W.2d 515, 524 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.), citing *McIver v. Gloria,* 140 Tex. 566, 169 S.W.2d 710, 712 (1943). However, a party should introduce evidence from which a jury might reasonably measure earning capacity prior to the injury and project that party's future loss. *City of Amarillo v. Langley,* 651 S.W.2d 906, 916–17 (Tex.App.—Amarillo 1983, no writ). Proof of life expectancy is not required to recover lost future earnings, because the jury may reach its own conclusion as to life expectancy based upon evidence of the injured party's age, health and physical condition prior to the injury, and the permanence of the injury. *Paragon Hotel Corp. v. Ramirez,* 783 S.W.2d 654, 661 (Tex. App.—El Paso 1989, writ denied).

■ Ms. Deggs was 78 years of age at the time of the incident in question, 79 at the time of trial. She testified at trial that before she got hurt she worked part-time making flower arrangements at the rate of $5.00–$5.50 per hour, and at Valentine's and Mother's Day she would work a whole week. She indicated she would sometimes make $250–$300 per week during the season and holidays. She also indicated she used to sew and make wedding dresses and formals but could no longer do that because of the injury to her hand and arm. Her employer, who was with her at the time of the accident, testified Ms. Deggs worked for her on projects as a decorator during the busy times. We hold the trial court did not err in including the element of lost earning capacity in the future in the charge to the jury, inasmuch as there was evidence to support damages for that element.

In arguing there was no evidence to support including the element of loss of earning capacity in the future, appellants primarily rely on the cases of *Szczepanik v. First Southern Trust Co.*, 883 S.W.2d 648, 650 (Tex.1994), *Border Apparel–East v. Guadian*, 868 S.W.2d 894 (Tex.App.—El Paso 1993, no writ), and *Rubner v. Kennedy*, 417 S.W.2d 860 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.).

We find all of those cases distinguishable. In *Szczepanik*, the Texas Supreme Court held an investment firm had failed to present evidence of its lost profits, upholding an instructed verdict granted by the trial court. *Szczepanik*, 883 S.W.2d at 649–650. The investment firm was primarily managing retirement assets for retired airline pilots. The firm was suing certain of its former officers and employees who had left to form a competing business. The Supreme Court, referring to the fact the Court of Appeals had held there was sufficient evidence, referred to the Court of Appeals' reliance on testimony the investment firm could have expected to retain the accounts for the lifetime of the individual account holders and pointed out there was no evidence of the life expectancy of the individual account holders. We find that case, which involved a large number of faceless individuals of varying ages, to be quite different from this case involving someone whose age and limited work history was shown.

In *Border Apparel–East*, the Court of Appeals held the evidence was not factually sufficient on the element of lost earning capacity in the future where the injured worker failed to present evidence as to what she actually earned and presented no evidence as to her stamina, her efficiency, or any other evidence as to the existence of any other weaknesses or other degenerative changes occurring as a natural result of her injury. *Border Apparel–East*, 868 S.W.2d at 897–898. As noted, *Border Apparel–East* involved a review of the factual, not the legal, sufficiency of the evidence. *Id.* at 896. Objection to the court's charge may never be based upon the evidence being factually insufficient to support it. *Smith v. Christley*, 755 S.W.2d 525, 528 (Tex.App.—Houston [14th Dist.] 1988, writ denied); *Clarostat Mfg., Inc. v. Alcor Aviation, Inc.*, 544 S.W.2d 788, 791 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.). We also note in this case Ms. Deggs did testify as to what her earnings were and as to the limited extent of her work. In *Rubner*, unlike the case at bar, there was no evidence as to the worker's earnings prior to his injury. While there was some testimony as to how much he was drawing each month out of a business, the source of the money could not be determined from the evidence. *Rubner*, 417 S.W.2d at 862.

Appellants contend Ms. Deggs' evidence is deficient because she is well beyond the standard average work-life tables, and that she failed to provide evidence of a routine work schedule or evidence that, despite her age, she possessed a remaining work-life expectancy. As we have already noted, Ms. Deggs was not required to prove her life expectancy. We know of no authority, and appellants do not refer us to any, that would prevent recovery based on loss of future earning capacity by those who, like Ms. Deggs, do seasonal work rather than have a routine work schedule. We believe the evidence she was doing such work constitutes evidence that, despite her age, she possessed a remaining work-life expectancy.

· ■ Appellants also urge the element of damage as to loss of earning capacity in the future should not have been submitted because Ms. Deggs failed to answer an interrogatory concerning that subject matter. They are correct that prior to trial Ms. Deggs had answered such an interrogatory with the response "N/A" and there was never any supplement to that response. However, inasmuch as appellants made no objection to this element of damage based upon the failure to answer an interrogatory concerning the same, they present nothing for review. We overrule point of error number five.

Appellants insist in point of error number six the damage award is excessive and remittitur is required. After incorporating the argument and authorities from point of error number four, a point not involving the issues in this point, appellants' sole argument and authority consists of the sentence, "In addition, Appellants urge that the damage award is excessive considering Deggs' age, her complete recovery from her facial and knee injury and her failure to seek corrective treatment for her thumb injury which bears upon any award for future pain and suffering or medical expenses." Because appellants really present us no argument or authorities concerning this point, they present nothing for review. *Happy Harbor Methodist Home, Inc. v. Cowins*, 903 S.W.2d 884, 886 (Tex. App.—Houston [1st Dist.] 1995, no writ). We overrule point of error number six.

■ Appellants contend in point of error number eight the trial court erred in granting a directed verdict finding them liable for 100% of Ms. Deggs' damages because there is some evidence Ms. Deggs suffered from pre-existing injuries. While the court issued a directed verdict against appellants on the issue of liability, there is nothing in the record to reflect the trial court found appellants liable for damages resulting from any pre-existing injuries Ms. Deggs may have had. The charge to the jury asked the jury to find only those damages resulting from the incident in question. While it is difficult to determine the· exact nature of appellants' claim of error under this point, they do refer to the fact that in a case such as this the trial court should charge the jury the plaintiff is entitled to recover only to the extent the plaintiff's injuries are aggravated by the defendant's negligence. They rely on the case of *J.M. Dellinger, Inc. v. McMillon*, 461 S.W.2d 471, 475 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.). At trial, appellants, while requesting such an instruction, included it in a proposed charge containing several questions and instructions rather than submitting· it individually. By failing to submit the instruction individually, they failed to preserve error. *Edwards v. Gifford*, 137 Tex. 559, 564, 155 S.W.2d 786, 788–789 (1941); *Demler v. Demler*, 836 · S.W.2d 696, 698 (Tex.App.—Dallas 1992, no writ). *See J.M. Dellinger, Inc.*, 461 S.W.2d at 475. We overrule point of error number eight.

Appellants argue in point of error number nine the trial court erred in granting compounded prejudgment interest on the judgment. The trial court awarded prejudgment interest in the amount of $59,707.31; appellants say the correct amount of prejudgment interest, based upon simple interest, without compounding, should be $58,673.15.

■ Prejudgment interest is to be computed as simple interest. TEX.REV.CIV. STAT. ANN. art. 5069–1.05, § 6(g) (Vernon 1987 & Supp.1996). Absent certain exceptions not applicable here, such interest begins on the 180th day after the date the defendant receives written notice of a claim or on the day the suit is filed, whichever occurs first. *Id.* at § 6(a). Simple interest is determined by the formula i(interest)=p(principal)*r(rate of interest)*t(time). Utilizing that formula in this case, we arrive at the figure suggested by appellants. We multiply the principal, $331,000, by the rate of interest on the judgment, 10%, by 1.772602739, the number of years from the date that this suit was filed, February 26, 1993, to December 4, 1994, the day preceding the date judgment was rendered. *Id.* at § 6(a). We sustain point of error number nine.

The judgment as to Wal–Mart is reformed to reflect prejudgment interest in the amount of $58,673.15, for a total judgment of $389,-673.15, at interest of 10% compounded annually from December 5, 1994, the date the judgment was signed, until paid. The judg-

ment is affirmed as reformed. The judgment as to Smith is reversed and the cause of action as to him is remanded to the trial court for trial. Costs of court are charged 3/4 to Wal–Mart and 1/4 to Carmen Deggs.

REVERSED AND REMANDED IN PART; REFORMED AND AFFIRMED IN PART.