TRUCO PROPERTIES, INC., Appellant,

v.

Faye CHARLTON, Appellee.

No. 9590.

Court of Appeals of Texas,
Texarkana.

March 8, 1988.

Rehearing Denied April 19, 1988.

Mikal S. Lambert, Fillmore, Purtle, Spurgers & Lambert, Wichita Falls, for appellant.

Robert Rolston, Old, Rolston & Old, Mount Pleasant, for appellee.

GRANT, Justice.

Faye Charlton recovered in a negligence action against her employer, Truco Properties, Inc. (hereinafter referred to as Truco). The employer was not a subscriber under the Workers' Compensation Act.

Truco contends on appeal: (1) that there is no evidence or insufficient evidence to support the jury's finding that Truco failed to provide proper instruction and training to Charlton in the task which caused the injury; (2) that this failure was not a proximate cause of Charlton's injury; (3) that there is no evidence or insufficient evidence to support the jury award of damages; (4) that the evidence is insufficient to support the jury finding that Charlton sustained her injury while working for Truco; and (5) that the court erred in excluding testimony about a possible alternate cause of the injury.

Charlton, a sixty-eight year old woman, was employed as a housekeeper in a nursing home operated by Truco. Charlton alleges that she sustained an injury while lifting a mop bucket filled with water for the purpose of emptying it into a sink. She testified that she immediately felt lower back pain and that this pain had made it impossible for her to continue employment.

The jury found that Charlton sustained an on-the-job injury in the employment of Truco, that Truco failed to provide proper instructions and training to Charlton for the job that she was performing, and that this failure constituted negligence, which was a proximate cause of her injury. The jury found the amount of damages for past and future physical pain and anguish to be $6,000, loss of past earnings to be $10,000, and medical expenses to be $2,000. (The $2,000 medical expense was reduced by the trial court to $1,408.50 to conform with the evidence.)

In reviewing a no-evidence point, the reviewing court considers only the evidence tending to support the finding, viewing it in the light most favorable to the finding, giving effect to all reasonable inferences therefrom, and disregarding all contrary or conflicting evidence. *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex. 1981). If there is any probative evidence tending to support the finding of the jury, the no-evidence point must fail. *Elliott v. Great National Life Ins. Co.*, 611 S.W.2d 620 (Tex.1981). In reviewing a factual insufficiency point, the court will consider all the evidence in the record that is relevant to the finding that is challenged, both that tending to prove and disprove the fact, and may set the verdict aside only to prevent a manifestly unjust verdict. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ Upon examining the evidence which supports this finding, we find testimony by Linda Adams, an administrator of the nursing home, to the effect that Charlton was hired in the laundry and that her file reflected that she was trained for that position. The training inventory checklist for Charlton duly notes each portion of the training received by Charlton by signature and date, but leaves blank the section referring to the training which was provided on body mechanics and lifting procedures. Adams, Truco's administrator, testified on her deposition that if she had received training it would be reflected by her file, but at trial Adams testified that the file did not necessarily reflect all the training given Charlton. The trainer, Doris Nelson, testified that the laundry/housekeeping

training was combined, and took about two hours total time. She also testified that she prepared a skills inventory checklist for Charlton reflecting her training in laundry skills, but no equivalent checklist for any housekeeping training.

Charlton testified that she received training as a laundry worker, the position for which she was hired, and that her total training consisted of a film lasting about a half hour.

The evidence reveals a clear dispute about the extent of training received by Charlton. Applying the standards set forth above, it is clear that there is some evidence on this point, and that this evidence is sufficient to support the jury's finding.

■ Truco next argues that there is no evidence or insufficient evidence to support the jury finding of proximate cause. Proximate cause includes two essential elements: (1) foreseeability and (2) cause in fact or causal relation. *Texas & Pacific Railway Co. v. McCleery*, 418 S.W.2d 494 (Tex.1967). For a result to be legally foreseeable, all that is required is that the injury be of such a general character as might be reasonably anticipated and that the injured party should be so situated with relation to the wrongful act that the injury to him or to one similarly situated might reasonably have been foreseen. *Motsenbocker v. Wyatt*, 369 S.W.2d 319 (Tex. 1963).

■ According to the jury findings, Charlton's injury was caused by Truco's failure to instruct her in safe methods of doing her job. Nelson, the training instructor, testified that part of her instruction included general instructions about methods of lifting heavy objects. She said:

I talk about lifting, the general rules. Use your thigh and leg muscles. Keep your back straight. Divide the weight between two hands. Take firm natural footing. Get as close to the object as possible. Squat or bend your knees and then straighten. Keep that object as close to your body as you can. If you need help, ask for it. Then we do some demonstrating.

Dorothy Leek, the housekeeper/laundry supervisor at the time of the incident, testified that it would be dangerous for a woman to try to pick up a full industrial-size mop bucket filled with water. Adams, the assistant administrator, also testified that it was important and necessary for employees to get training in their particular field for the safety of all concerned.

Thus, Truco recognized that an injury could be caused from lifting the large buckets full of water, and Truco knew that Charlton was required to empty these buckets in her work as a housekeeper. We find that there was sufficient evidence for the jury to find that it was foreseeable that without proper training, Charlton could be injured by improperly lifting such a bucket. Furthermore, we find that there is sufficient evidence for the jury to determine that the failure to instruct Charlton was a causation of her injury.

■ Within the discussion of these points of error, Truco argues that there may not have been a duty to instruct the plaintiff in the first place. In the case of *J. Weingarten, Inc. v. Moore*, 441 S.W.2d 223 (Tex.Civ.App.—Houston [1st Dist.] 1969), *aff'd in part and rev'd in part*, 449 S.W. 2d 452 (Tex.1970), the court found that an employer is charged with a duty to instruct an employee in the manner in which to lift heavy objects safely.

■ Truco further argues that when an employee is injured after choosing to perform a discretionary act in an unsafe manner after his or her employer has provided a safe means of accomplishing the task, it is unreasonable for the employer to be expected to foresee that the employee will choose the unsafe method of accomplishing the task. *Great Atlantic & Pacific Tea Co. v. Evans*, 142 Tex. 1, 175 S.W.2d 249 (1943). We have already determined that without proper instructions, it was foreseeable that an employee might improperly lift

a bucket that was used in performing the employee's duties. As for the employee's acts, Truco is barred from the common law defenses of contributory negligence and assumption of the risk, because the company did not carry workers' compensation insurance. Tex.Rev.Civ.Stat.Ann. art. 8306, § 1 (Vernon 1967 & Supp.1988).

■ Truco next contends that there is no evidence or insufficient evidence to support the jury award of lost earnings between the time of the accident and the time of trial. Adams testified that Charlton was making $3.35 an hour at the time of her injury. Her testimony further reflects that the employees worked approximately seven and a half hours a day and that Charlton worked for five days a week. Charlton was injured March 21, 1985, and the trial took place more than two years later in April, 1987. Charlton testified that she was not able to work and did not work at all during that time. These figures would justify a jury award of $10,000 for lost wages.

■ Truco further contends that the evidence is insufficient to support the jury finding that Charlton sustained her injury at Truco. Charlton testified in graphic detail how she was injured as a result of trying to lift the bucket filled with water. A co-worker also testified that she saw Charlton attempt to lift the bucket and hurt her back. The evidence is clearly sufficient to support the jury finding that Charlton was injured in the course of her employment.

■ Truco also contends that the trial court committed reversible error in refusing to admit testimony from a witness about a possible alternative cause of the injury. Truco attempted to call Charlton's daughter, Janice Gibbs, as an adverse witness. The record shows that Truco had no expectation that Gibbs would testify to facts that would advance its cause, but wanted an opportunity to attack her testimony. Gibbs testified outside the presence of the jury that she knew nothing about any possible alternative causes of the injury. Truco complains about this testimony not being admitted, because they wanted to impeach Gibbs by the testimony of Betty Phillips. In a bill of exceptions, counsel stipulated that Phillips would testify that Gibbs told her that her mother (Charlton) fell out of bed while drunk and hurt her back, and also that Gibbs had telephoned Phillips to tell her that she didn't want to get involved.

■ A witness may be impeached by his earlier inconsistent statement, Tex.R.Evid. 613(a), and pursuant to Tex.R.Evid. 607, a party may impeach his or her own witness. The question raised by Truco is whether the witness may be called solely for the purpose of later impeachment by the use of otherwise inadmissible hearsay. *See* 1 R. Ray, *Texas Law of Evidence Civil and Criminal* § 632 (Texas Practice 3d ed. Supp.1986). This appears to be an effort to admit testimony through the back door that could not otherwise be allowed. At the most, the testimony of Phillips would be admissible for impeachment purposes only, and not to advance Truco's case-in-chief. Truco is attempting to place testimony received solely for impeachment purposes on the same level as testimony proof received as part of the case-in-chief. Impeachment testimony is admissible to show that a witness is not trustworthy, but it cannot be used for other purposes unless otherwise admissible on some other ground. *Fultz v. First National Bank in Graham*, 388 S.W.2d 405, 408 (Tex.1965); 1 R. Ray, *Texas Law of Evidence Civil and Criminal* § 678 (Texas Practice 3d ed. Supp.1986). This basic principle was not changed by the adoption of the codified Rules of Evidence. This point of error is overruled.

The judgment of the trial court is affirmed.